Strafford
No. 2005-415

LYNN WARNER

v.

CLARENDON INSURANCE COMPANY

Argued: May 11, 2006
Opinion Issued: November 2, 2006

*Cleveland, Waters and Bass, P.A.*, of Concord (*Mark D. Wiseman* on the brief and orally), for the plaintiff.

*Mallory & Friedman PLLC*, of Concord (*Mark L. Mallory* on the brief) and *Sugarman, Rogers, Barshak & Cohen, P.C.*, of Boston, Massachusetts (*Edward J. Barshak* on the brief and orally), for the defendant.

BRODERICK, C.J. The plaintiff, Lynn Warner, appeals an order of the Superior Court (*Mohl*, J.) granting a declaratory judgment in favor of Clarendon Insurance Company (Clarendon). We affirm.

In September 1999, Jennifer Corlett, a Maine resident, leased a truck owned by Ryder TRS, Inc. (Ryder) from its rental agency in Idaho. Corlett executed a rental agreement for the vehicle which listed Scott E. Brown as an additional driver. Paragraph 10A of the agreement provided:

> If there is no violation of a use restriction (paragraph 2), Ryder TRS provides protection for bodily injury (including death) and property damage resulting from use or operation of the Vehicle, limited as follows: Ryder TRS' protection does not apply until after exhaustion of all insurance and/or other protection available to the driver of the Vehicle and/or any injured passenger in the Vehicle (automobile liability insurance, no fault insurance, personal injury protection, employer's insurance and/or any other protection or indemnification, whether primary, excess, or contingent), and then Ryder TRS' protection applies only to the

extent it is needed to meet, on a cumulative basis with all such insurance and/or other protection available to the driver and/or injured passenger(s), the minimum financial responsibility limits and/or minimum no fault benefits required by applicable law. . . . To the extent applicable law requires that Ryder TRS provide protection other than as described above, it will not exceed the minimum financial responsibility limits and/or minimum no fault benefits. "Minimum financial responsibility limits," as used in this Agreement, refer to the minimum amount of protection that is required to establish financial responsibility under applicable law. **TO THE EXTENT PERMITTED BY APPLICABLE STATE LAW, ANY AUTOMOBILE LIABILITY COVERAGE PROVIDED UNDER THE LIABILITY PROTECTION PLAN WILL BE EXCESS OVER ANY VALID AND COLLECTIBLE INSURANCE OTHERWISE AVAILABLE TO ME OR ANY PERMISSIVE USER, UNLESS OTHERWISE INDICATED ON THE RENTAL INFORMATION SHEET.**

Approximately a week later, while driving the rented Ryder truck through Hopkinton, New Hampshire, en route to Maine, Brown fell asleep at the wheel, crossed the center line and struck the automobile Warner was driving.

At the time of the accident, Ryder was covered by an insurance policy issued by the now insolvent Frontier Insurance Company (Frontier) that included business auto coverage. That policy covered Corlett and Brown as permissive users of a Ryder vehicle. Clarendon is Frontier's reinsurer.

Ryder's policy provides $2 million in liability coverage. It includes two endorsements, STAR-2 and STAR-3, that amend the "Other Insurance" subpart of the policy's "General Conditions." STAR-2 recites: "The coverage provided by this policy is primary insurance with respect to the 'rentee' or driver as an 'insured' under an 'auto' rental contract, but only with respect to the limit of insurance required under the Financial Responsibility law for the state in which the 'auto' is rented." STAR-3 provides: "It is agreed that the coverage provided by this policy is primary insurance with respect to the 'rentee' or driver as an 'insured' under an 'auto' rental contract." The policy includes another endorsement, STAR-7, that amends the "Coverage" part of the "Liability Coverage" section. STAR-7 states: "The insurance coverage provided by this policy to a 'rentee' is subject to the terms, conditions, restrictions, and limitations contained in the rental agreement between [Ryder] and such 'rentee.'"

After the accident, Warner corresponded with Frontier's third-party administrator, Murdock Claim Management Corporation (Murdock), to determine the amount of coverage available to Corlett and Brown under the policy. Murdock offered Warner $25,000, which it said was the amount of liability coverage required by the financial responsibility statutes in both Idaho and New Hampshire. In rejecting Warner's contention that Corlett and Brown were entitled to coverage up to the $2 million policy limit, Murdock cited STAR-2 which, according to Murdock, limited coverage "to the limit of insurance required under the Financial Responsibility law for the state in which the 'auto' is rented." Murdock rejected Warner's argument that STAR-2 and STAR-3, when read together, rendered the policy ambiguous.

Warner filed a petition for a declaratory judgment in the superior court, contending that a contradiction existed between STAR-2 and STAR-3 which created an ambiguity that Warner claimed should be construed against Clarendon, with the result that Corlett and Brown would each be entitled to up to $2 million in coverage. Clarendon filed an answer and counterclaim, asking the trial court to declare that its coverage was limited to $25,000 under STAR-7, because this was the financial responsibility limit in New Hampshire, Idaho and Maine. Both parties moved for summary judgment. The trial court denied Warner's motion and granted Clarendon's, ruling that the coverage available from Clarendon was $25,000, and that Clarendon's coverage was in excess of any other insurance available to Corlett and Brown that cumulatively equaled that amount.

On appeal, Warner argues that the trial court erred by: (1) ruling that Clarendon's coverage of Brown and Corlett was limited to $25,000 rather than the $2 million policy limit; (2) ruling that STAR-7 is unambiguous and consistent with applicable financial responsibility law; and (3) failing to apply the financial responsibility law of Florida, Ryder's home state.

"We review the trial court's application of the law to the facts *de novo*." *Handley v. Providence Mut. Fire Ins. Co.*, 153 N.H. 340, 341 (2006).

We need not decide whether the asserted contradiction exists between STAR-2 and STAR-3 and, if so, whether it creates an ambiguity that must be construed against Clarendon. Even if such an ambiguity existed, STAR-7 stands on its own.

Under STAR-7, the liability coverage available to Corlett and Brown "is subject to the terms, conditions, restrictions, and limitations contained in the rental agreement between [Ryder] and [Corlett]." Paragraph 10A of the rental agreement provides that liability coverage "will not exceed the minimum [applicable] financial responsibility limits and/or minimum no

fault benefits." At the time of the accident, the minimum financial responsibility limit in New Hampshire was $25,000. RSA 264:20 (2004).

Warner argues that STAR-7, when read in conjunction with STAR-3, creates the same sort of ambiguity that exists between STAR-2 and STAR-3 and that, in any event, STAR-7 is a "step-down" provision that violates both RSA 264:14, II (2004) and RSA 264:18, VI (2004).

The trial court correctly determined that even when STAR-3 is read to require liability coverage up to the full policy limit, STAR-7 does not render the policy ambiguous. Unlike STAR-2 and STAR-3, which appear to revise the same portion of the policy in two different ways, without comment on the relationship between those two endorsements, STAR-7 directly addresses the relationship between itself, the rental agreement, and STAR-3. STAR-7 recites that "[t]he insurance coverage provided by this policy,"—which necessarily includes the coverage provided by STAR-3—"is subject to the terms, conditions, restrictions, and limitations" in the rental agreement. Because there is no reasonable way to read STAR-7 as allowing STAR-3 to trump the rental agreement, there is no ambiguity to resolve against Clarendon. We would reach this conclusion under either New Hampshire law or Florida law. See Catholic Med. Ctr. v. Executive Risk Indem., 151 N.H. 699, 701 (2005) ("If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer."); Taurus Holdings v. U.S. Fidelity, 913 So. 2d 528, 532 (Fla. 2005) ("[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous" (quotation omitted)).

■ Warner's two statutory arguments are unavailing. Her reliance on RSA 264:14, II is misplaced, because RSA 264:14, II applies to "policies issued under this section," and there is no evidence that Ryder's policy was issued under RSA 264:14. Cf. Ellis v. Royal Ins. Co., 129 N.H. 326, 332-35 (1987) (declining to apply RSA 264:15, I, to an insurance policy neither issued nor delivered in New Hampshire). Moreover, there is no evidence that the truck in this case was "registered or principally garaged in this state," RSA 264:14, I, which is yet another prerequisite to the applicability of section 264:14, II. In fact, the trial court determined that the truck was licensed and registered in Florida. Warner's argument based on RSA 264:18, VI fails for a more fundamental reason; it was not raised in the trial court, and is, therefore, not preserved for our review. See Broughton v. Proulx, 152 N.H. 549, 555 (2005).

■ Warner's final argument concerns choice of law and, specifically, her contention that New Hampshire's choice-of-law rules require application of

Florida's financial responsibility law rather than New Hampshire's. However, even assuming it is appropriate to interpret and enforce Ryder's policy under Florida law—a question we need not decide—application of Florida law to Ryder's policy does not make Florida's financial responsibility law the "applicable law" referred to in paragraph 10A of the rental agreement.

"Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus Holdings*, 913 So. 2d at 532. "In construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect." *General Star Indem. v. W. Fla. Village Inn*, 874 So. 2d 26, 30 (Fla. Dist. Ct. App. 2004). Paragraph 10A of the rental agreement speaks of "the minimum financial responsibility limits and/or minimum no fault benefits required by applicable law." That paragraph makes three more references to "applicable law," and one each to "applicable no fault law" and "applicable state law." Plainly, use of the phrase "applicable law" rather than "Florida law" was deliberate, and we would not rewrite the rental agreement to substitute the latter for the former. *See Taurus Holdings*, 913 So. 2d at 532 ("courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties'"). Moreover, had Ryder and Frontier contemplated that Florida's financial responsibility and no fault laws were the applicable laws, Ryder's policy would not have included thirty-nine endorsements, covering more than 140 pages, pertaining to the financial responsibility and no fault laws of twenty-eight different states; we will not read the rental agreement in a way that renders those endorsements inoperative. *See General Star*, 874 So. 2d at 30. Under the principles of contract interpretation in force in Florida, the rental agreement cannot be read to require application of Florida's financial responsibility law.

Because the trial court correctly construed the Clarendon policy, its grant of summary judgment to Clarendon is affirmed.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.