Hillsborough-southern judicial district
Nos. 2006-329
    2006-334

## IN THE MATTER OF STATE OF NEW HAMPSHIRE AND ESTATE OF FRANK S. CRABTREE, III

## IN THE MATTER OF KATHERINE CRABTREE AND ESTATE OF FRANK S. CRABTREE, III

Argued: March 21, 2007
Opinion Issued: June 15, 2007

*Kelly A. Ayotte*, attorney general (*Karen A. Schlitzer*, assistant attorney general, on the brief, and *Elyse S. Alkalay*, assistant attorney general, orally), for the New Hampshire Division of Child Support Services.

*Gawryl & MacAllister*, of Nashua (*Janine Gawryl* on the brief and orally), for the respondent.

BRODERICK, C.J. In these appeals, the respondent, Estate of Frank S. Crabtree, III (estate), challenges two recommendations of the Master (*Love*, M.), approved by the Superior Court (*Hampsey*, J.), to deny requests for injunctive relief and dollar for dollar credit toward child support obligations based upon payments of Social Security dependency benefits to the children for whom the decedent, Frank S. Crabtree, III (Crabtree), was obligated to provide child support. We affirm in part, vacate in part and remand.

## I

The record supports the following. At the beginning of 2003, Crabtree was under court orders to pay child support of $101 per week to Katherine Crabtree and $70 per week to Reba Slade. Crabtree had two children with Katherine and one child with Slade. Because Katherine received TANF (Temporary Assistance to Needy Families) benefits, she assigned her right to collect child support to the State. Crabtree's obligation to Slade was payable through the New Hampshire Division of Child Support Services (division), and Slade specifically asked the division to enforce her child support order.

Crabtree became disabled and unable to work in November 2003. He applied for Social Security disability insurance benefits, which were awarded in June 2005. He received his first monthly benefit check that month, along with a lump-sum payment of retroactive benefits. At the same time, all three of Crabtree's children received lump-sum payments of

retroactive Social Security dependency benefits and began receiving monthly benefit checks due to Crabtree's disability.

At the same time Crabtree was pursuing Social Security disability benefits, he was also seeking to reduce his child support obligations. In July 2004, he moved to modify both of his child support orders, informing the court that his circumstances had changed because he was "unemployed and [had] filed for disability." In May 2005, the trial court approved uniform support orders modifying Crabtree's support obligations. Specifically, the court ordered Crabtree to pay $50 per month plus an arrearage "to be determined by agreement" for the support of his children with Katherine and to pay $50 per month for the support of his child with Slade. Although Crabtree was in arrears on his obligation to Slade, the new order pertaining to Slade's child did not address that arrearage. Both modifications were retroactive to October 5, 2004, the date of service.

Shortly after the trial court approved the modifications of Crabtree's child support obligations, the division began taking various actions against Crabtree to collect both his ongoing child support obligations and his arrearages. At issue here are two collection actions: (1) the division's garnishment of Crabtree's own direct Social Security disability benefits; and (2) its lien on his Bank of America checking account.

In response to the division's collection actions, and in reliance upon our decision in *In the Matter of Angley-Cook & Cook*, 151 N.H. 257 (2004), Crabtree asserted his right to have the division give him credit toward his ongoing and past due child support obligations based upon the Social Security dependency benefits his children were receiving. Among other things, he argued that because his children received monthly benefits in excess of the amount he was obligated to provide in child support, his ongoing support obligations and arrearages were effectively satisfied by those benefits. However, neither Crabtree nor the division ever requested the trial court to modify his child support obligations.

The relevant facts concerning the lien on Crabtree's bank account demonstrate that in August 2005, the division's office of child support provided Crabtree with affidavits of arrearages reflecting $6,735.36 owed to Slade and $10,311.24 owed to Katherine.

In two letters dated October 19, 2005, the division informed Crabtree of a $14,006 TANF arrearage and a $3,190 non-TANF arrearage. As to enforcement of those obligations, the letters discussed referral to the federal government for collection by administrative offset and/or federal tax refund offset. Crabtree contested both arrearages and requested administrative review.

By letter dated October 21, 2005, the Bank of America informed Crabtree that it had "been served with a tax levy/child support notice in

the amount of $6885.36 naming [him] as judgment debtor." The letter also said that the bank was required to charge his account for up to the amount of the levy, and that he was subject to a fifty-dollar service charge. According to Crabtree's December 12, 2005 account statement, "a transaction posted on October 21, 2005 showed the levy of $4,673.62 [and] [a] further transaction posted on November 3, 2005 showed the funds being returned to his account."

By *ex parte* order dated November 3, 2005, and issued in response to the motion that gave rise to this appeal, the trial court restrained the division from taking further collection actions against Crabtree and vacated the lien against his bank account. In an order dated November 8, 2005, issued following a hearing, the trial court reinstated the lien, with the proviso that Crabtree "shall be able to access $1,500 per month to pay for his own living expenses pending hearing on his [motion]." Crabtree's monthly Social Security benefit was $1,467 per month.

After the trial court reinstated the lien on Crabtree's bank account, the division served him with two notices of lien. According to those notices, the liens arose under RSA 458:17 (2004) (current version at RSA 461-A:14 (Supp. 2006)). The notices also informed Crabtree that his bank had been served with the notice of lien and an "order to withhold against all money ... in [its] possession that is due, owing or belonging to [him]," and that if he did not make satisfactory arrangements to pay the stated arrearages within twenty days, the division would "demand that BANK OF AMERICA, N.A. deliver all withheld property or money that is not exempt from attachment, to [the division]." As authority for the order to withhold and deliver, the division cited RSA 161-C:12 (2002). Crabtree contested both notices of lien and requested administrative review. According to the division, Crabtree's account statement indicated "that a transaction posted on November 18, 2005 showed a levy of $2,837.70." As of February 13, 2006, "those funds [were] still on hold at the bank, and have not yet been disbursed to the State of [New Hampshire]." The record contains no further information regarding the precise status of the funds that are "on hold," and it does not appear from the record that the division has yet served the bank with a demand to deliver the withheld funds.

The trial court order that gave rise to this appeal resulted from Crabtree's "verified motion for ex parte injunction, accounting and to determine arrearages (if any)." In that motion, Crabtree argued that: (1) he was paying substantially more than the court-ordered $50 per month per order, due to his children's receipt of Social Security dependency benefits coupled with his entitlement to a dollar for dollar credit toward his child support obligations on account of those benefits; (2) the division's garnishment of his direct Social Security benefits to pay his child support

obligations was "without legal authority"; and (3) the division's lien on his bank account was unlawful. Subsequently, Crabtree also filed an *ex parte* motion to enjoin the deduction of child support from his Social Security benefits in which he argued that his children's dependency benefits covered his ongoing obligations to them and were sufficient to eliminate all of the arrearage he owed Katherine and some of the arrearage he owed Slade, the balance of which was more than covered by the lien on his bank account.

After a hearing, the trial court ruled that in the absence of any judicial modification, Crabtree was subject to two support orders, each requiring payments of $50 per month and until he sought judicial modification of those support orders, he was not entitled to any credit for his children's Social Security dependency benefits toward either his ongoing support obligations or his arrearages. Regarding the lien, the court explained:

> [The division] was within its right to have a lien placed on the monies in the respondent's Bank of America account. There was no evidence to support the petitioner's contention that the monies were withdrawn at the direction of [the division]. As a result of the lien, Bank of America forwarded [a] check to [the division] in the sum of $4,673.62 on October 21, 2005 and [the division] returned those funds on November 3, 2005. The evidence also showed that a second transaction was posted on November 18, 2005 showing a levy in the sum of $2,873.70. These funds are still on hold at the bank.

The court also denied Crabtree's request for bank charges, attorney's fees and costs. This appeal followed.

During the pendency of this appeal, Crabtree died, and his estate replaced him as a party. According to the estate, the appeal is not moot because Crabtree's claims in this case are assets of the estate. On appeal, the estate argues that the trial court erred by: (1) ruling that Crabtree was obligated to seek modification of his child support obligations before he was entitled to credit for his children's Social Security dependency benefits; (2) denying Crabtree's request to apply his children's retroactive Social Security dependency benefits to his child support arrearages; (3) ruling that the division had the authority to garnish Crabtree's Social Security benefits and place a lien on his bank account without following the procedures in RSA chapter 161-C (2002 & Supp. 2006); (4) denying Crabtree's request to enjoin the garnishment of his Social Security benefits; (5) ruling that Crabtree's bank account was not exempt from the imposition of a lien; and (6) failing to award attorney's fees, costs and bank charges.

We will uphold the trial court's decision with regard to child support unless it is unsupported by the evidence or tainted by an error of law. *In the Matter of Hampers & Hampers*, 154 N.H. 275, 283 (2006).

II

Resolution of the estate's first and second issues on appeal depends upon whether the trial court correctly ruled that Crabtree was obligated to seek modification of his child support obligations before he was entitled to credit for his children's Social Security dependency benefits. We hold that he was.

■ New Hampshire, like a majority of states, allows, as a *per se* rule, credit toward a noncustodial parent's child support obligation for Social Security benefits paid to the obligor's dependent children. *Angley-Cook*, 151 N.H. at 258-59. Our opinion in *Angley-Cook* includes the following discussion, which is directly relevant to the question now before us:

> Therefore, we find that Social Security . . . dependency benefits constitute a payment in money for the purposes of satisfying the obligor parent's child support obligation under RSA 458-C:2, II.
>
> Furthermore, the court shall consider the dependency benefits as gross income to the respondent when calculating his child support obligation. RSA 458-C:2, IV defines "gross income" as "all income *from any source*," and explicitly lists social security benefits in the items that are to be included in income. . . . We agree with the Massachusetts Supreme Judicial Court that the fairest approach for calculating the credit here is to treat the dependency benefits as if they were first paid directly to the noncustodial parent, who then pays that same amount to the custodial parent to satisfy some part of the support obligation.

*Id.* (citation, quotation, brackets and ellipsis omitted). Once we established the general principle, we outlined the procedure by which the noncustodial parent's credit is to be allowed by the trial court after it has performed a child support guideline calculation:

> [T]he amount of the dependency benefits should be included in the income of the noncustodial parent and the guidelines should then be applied to that amount. The noncustodial parent is then allowed a credit equal to the amount of the dependency benefits, and the net amount of the noncustodial parent's support obligation is the difference between the support amount determined by the court to be correct under the guidelines minus the amount of the credit.

*Id.* at 260 (quotation, citations and ellipsis omitted). We recently revisited the issue of dollar for dollar credit, explaining that in *Angley-Cook*, "we held that *the trial court* must allow the noncustodial parent a dollar for dollar credit for Social Security . . . benefits received by the child." *In the Matter of State & Taylor*, 153 N.H. 700, 709 (2006) (emphasis added). However, we said nothing in *Taylor* to alter the principle, established in *Angley-Cook*, that credit for Social Security dependency benefits may only be allowed, by the court, after the amount of those benefits has been included in the noncustodial parent's income and the court has performed a guideline calculation that takes that income into account.

According to the estate, our establishment of a *per se* rule regarding a noncustodial parent's right to dollar for dollar credit for Social Security dependency benefits entitled Crabtree to some sort of self-executing credit, or a credit allowed by the division, without his having to move for a modification of his child support obligation. That is incorrect. For one thing, the division lacks the authority to modify, and may only seek to enforce, a child support order issued by the court. *See In the Matter of Haller & Mills*, 150 N.H. 427, 430 (2003) (explaining that child support "obligation remains in effect until it is judicially modified"). Moreover, in both *Angley-Cook* and *Taylor*, we described the dependency benefit credit as being allowed by the trial court after the performance of a new calculation under the child support guidelines. The reason for this is obvious.

█ In the case before us, for example, Crabtree's child support obligations were based upon his income before he and his children began receiving Social Security benefits. When those benefits commenced, his income rose by the combined amount of the benefits paid to him and his children. Under the estate's theory, Crabtree was entitled to use part of his increased income to pay a child support obligation based upon his previous, lower income. But, if Crabtree's income rose, it seems obvious that, absent special circumstances, *see* RSA 458-C:5 (Supp. 2006), his child support obligations should also have risen. The estate explains that "Crabtree did not wish to modify his child support to a higher amount after his children's receipt of social security benefits in June 2005." That may very well be, but by making that choice, Crabtree exposed himself to at least one consequence: forfeiture of his right to a credit for his children's dependency benefits. Under our holding in *Angley-Cook*, the *per se* credit is not self-executing, and a parent is not entitled to credit for Social Security dependency benefits without also assuming a child support obligation that reflects his new income. Because the only mechanism provided by statute for initiating the modification of a child support order

is an application from either the obligor or the obligee, *see* RSA 458-C:7, I (2004), we affirm the trial court's ruling that Crabtree was required to move for a modification of his child support obligations before he was entitled to the credit we established in *Angley-Cook*.

■ Because credit for Social Security dependency benefits may be allowed by the trial court only after it performs a child support guideline calculation that takes into account the obligor's new income, the benefits Crabtree's children received did not count toward his ongoing support obligations. That much is established by *Angley-Cook* and *Taylor*.

■ In addition, Crabtree's children's receipt of Social Security dependency benefits did not diminish Crabtree's arrearages. Under our holding in *Griffin v. Avery*, 120 N.H. 783 (1980), the trial court has the discretion to allow credit toward a child support arrearage based upon dependency benefits received by the obligor's children, *id.* at 787. According to the estate, our decision in *Angley-Cook* transformed the discretionary rule in *Griffin* into a mandatory rule. We disagree. *Angley-Cook* did not involve the application of Social Security dependency benefits to child support arrearages. Therefore, that decision had no effect upon the rule we established in *Griffin*. Consequently, as has been the case since we decided *Griffin*, the trial court in this case theoretically had the discretion to apply some portion of Crabtree's children's dependency benefits to Crabtree's child support arrearage. But, as a practical matter, the trial court had no way to exercise that discretion. Because Crabtree never moved to modify his ongoing support obligations, as he was obligated to do to receive credit for his children's dependency benefits, the court had no way of knowing how much of those dependency benefits would remain after meeting properly calculated support obligations. Moreover, the trial court was entirely correct when it explained that "[t]he ultimate effect of granting [Crabtree's] request [to have payments received by his children applied toward his arrearages] would be to shift the responsibility for payment of the arrears upon the obligee [because Crabtree] would be paying his arrears with money rightfully includable in gross income for ongoing child support."

In sum, the trial court committed no error by declining to allow Crabtree a credit against his ongoing child support obligations and arrearages based upon his children's Social Security dependency benefits.

### III

■ A portion of the estate's third issue and all of its fourth issue pertain to the garnishment of Crabtree's direct Social Security benefits. Specifically, the estate argues that the trial court incorrectly ruled that the

division had the authority to garnish Crabtree's Social Security benefits and that the trial court erroneously denied his request to enjoin the garnishment. On appeal, the estate makes various statutory arguments concerning the legality of the garnishment. But the only argument Crabtree presented to the trial court is the one we have already rejected: that a child's receipt of dependency benefits automatically entitles the noncustodial parent to a self-executing credit toward his child support obligations. Because the estate's statutory arguments were not raised in the trial court, they have not been preserved for our review. *See Warner v. Clarendon Ins. Co.*, 154 N.H. 331, 334 (2006). And because the estate's only properly preserved argument is without merit, we hold that the trial court committed no error by declining to grant the requested relief concerning the garnishment of Crabtree's Social Security benefits.

## IV

A portion of the estate's third issue and all of its fifth issue pertain to the action taken against Crabtree's bank account before his death. Specifically, the estate argues that the trial court incorrectly ruled that: (1) the division had the legal authority to seize retroactive Social Security benefits paid into Crabtree's bank account and to place a lien on that account without following the notice, due process, and assertion of lien requirements set forth in RSA chapter 161-C; and (2) Crabtree's bank account was not exempt from the imposition of a lien under RSA 161-C:11 and RSA 511:2 (Supp. 2006). The division contends that the action it took against Crabtree's bank account was entirely lawful. At issue here is the legal status of the $2,873.70 currently "on hold" at the Bank of America.

When Crabtree died, his bank account passed to his estate by operation of law. *Cf.* RSA 554:1 (2007). Thus, if the disputed funds were a part of that account, they, too, would have passed to the estate, and their disposition would be a question of probate law for resolution, in the first instance, in the probate court. However, the disputed funds were not in Crabtree's account; they had been withheld by the bank but not delivered to the division. Accordingly, to determine the proper disposition of those funds, we must determine whether, at the time of Crabtree's death, the division's lien on his bank account was lawful. If it was, then the division may make a demand for delivery of any of those funds to which it is legally entitled. If not, then those funds belong to the estate, subject, of course, to any claims the division might make as a creditor of the estate and any defenses properly raised in the probate court.

Crabtree's argument that the division had no authority to place a lien on his bank account because it contained Social Security disability benefits was not raised below and, therefore, was not preserved for our review. *See*

*Warner*, 154 N.H. at 334. Accordingly, we turn to the two arguments that were preserved: (1) that the division provided inadequate notice of its collection action; and (2) that the funds placed on hold by the bank were exempt from collection pursuant to a lien.

We begin with the issue of notice, and we note that the only action by the division we consider is the most recent one: *i.e.*, the one that resulted in the bank's withholding the disputed funds from Crabtree's bank account. As the record indicates, Crabtree challenged the division's first attempt to collect money from him by means of a lien on his bank account and won an *ex parte* injunction. However, the lien was reinstated by the trial court after a hearing, and shortly thereafter the division issued the notices of lien that presaged the most recent withholding of funds from Crabtree's account.

According to RSA 461-A:14, VII, "[l]iens shall arise by operation of law against real and personal property for child support arrearages owed by an obligor who resides or owns property in the state and shall incorporate any unpaid child support which may accrue in the future." Thus, as soon as Crabtree fell into arrears on his child support obligations, a lien arose against his real and personal property. When, as here, the division is subrogated to a legal order of support, the division's collection actions upon a lien established by RSA 461-A:14, VII are governed by RSA chapter 161-C. *See* RSA 161-C:4, I. Chapter 161-C provides, in pertinent part:

> I. An order to withhold and deliver property of any kind ... may be served on any person when the commissioner has reason to believe that there is in the possession of any such person property which is due, owing or belonging to the debtor.
>
> II. The commissioner may serve an order to withhold and deliver when a notice of debt has been served in accordance with RSA 161-C:7 ....
>
> ....
>
> VI. Any person served with an order to withhold and deliver *shall withhold immediately* any property ... due to or belonging to the responsible parent. After 20 days from the date of service of this order and upon demand of the commissioner, the property of the responsible parent shall be delivered forthwith to the commissioner.

RSA 161-C:12 (emphasis added). RSA 161-C:7, in turn, contains a list of information that must be provided in a notice of debt, *see* RSA 161-C:7, II, and provides that "[a]ctions to collect any debt accrued or accruing under

RSA 161-C:4 may commence after 20 days from the date of service of the notice of debt described in this section," RSA 161-C:7, III.

While the estate's argument on the notice issue is somewhat difficult to follow, it appears to claim that the division violated RSA 161-C:7, III because: (1) Crabtree was not informed of the amount of his debt, *see* RSA 161-C:7, II(a); (2) procedures for contesting the action were not provided to him, *see* RSA 161-C:7, II(f); and (3) the division initiated a collection action less than twenty days after Crabtree received notice, *see* RSA 161-C:7, III, before he received administrative review and before his arrearages were properly determined. The estate is incorrect on all counts. The estate also argues, in passing, that because the division failed to comply with the RSA chapter 161-C notice requirements, it effected an unconstitutional taking of Crabtree's property under Part I, Article 12 of the State Constitution.

 As the estate concedes, Crabtree was notified of the division's determination of the amount of his arrearages in early August 2005. That Crabtree disagreed with the division's determination does not mean that his arrearages had not been determined. Procedures for contesting the lien were provided to Crabtree on three occasions, and each time he sought administrative review pursuant to the procedures that were communicated to him. Moreover, as the division points out, Crabtree's most recent requests for administrative review were followed by court action, which obviated the need for administrative review. Finally, the estate is incorrect in claiming that the division undertook collection action less than twenty days after Crabtree received notice. Under RSA 161-C:12, II, an order to withhold and deliver, such as the one served upon Crabtree's bank, may be served anytime after a notice of debt has been served. Here, on the day the division sent out the notices of lien at issue, Crabtree had been provided all the information required by RSA 161-C:7, II. And once the bank received the order to withhold and deliver, it was required to "withhold immediately" any property of Crabtree's in its possession. RSA 161-C:12, VI. And that is where the disputed funds remained at least until February 2006, "on hold" at the bank. Because the division appears not to have demanded delivery of those funds and the bank appears not to have delivered them to the division, and certainly did not do so in the three months after it withheld them, the division cannot be said to have taken any collection action within twenty days of Crabtree's receiving the notice to which he was entitled under RSA 161-C:7, II. Thus, there was no violation of RSA 161-C:7, III. Finally, because the division did not violate the notice requirement of RSA chapter 161-C, the predicate

for the estate's argument under the State Constitution is not established and so that argument necessarily fails.

Because we conclude that the division did not violate the notice requirement of RSA 161-C:7, III, we next turn to the estate's argument that the disputed funds are protected by the exemptions in RSA 511:2.

■ The November 2005 notices of lien informed Crabtree that the division intended to demand that the bank "deliver all withheld property or money that is not exempt from attachment." That language would appear to be a reference to RSA 161-C:11, I, which—subject to certain exceptions—exempts "any property otherwise exempt from trustee process, attachment and execution ... from an order to withhold and deliver, administrative seizure and disposition, and lien and foreclosure." Exemption from attachment and execution, in turn, is addressed by RSA 511:2. In the order from which Crabtree appealed, the trial court ruled that the division "was within its right to have a lien placed on [Crabtree's bank] account." And, on reconsideration, the trial court rejected Crabtree's argument that "[t]hose monies allegedly held by the bank 'pursuant' to NH RSA 161-C are exempt under RSA 161-C:11 and NH RSA 511:2, XVIII, and are payable to [him]." However, despite Crabtree's argument that his entire bank account was exempt from attachment pursuant to RSA 161-C:11 and RSA 511:2, XVIII, the trial court's order included no discussion of the statutory exemptions from attachment. On appeal, the estate argues that the RSA 511:2, XVIII "wild card" exemption protected all the money in Crabtree's bank account. For its part, the division contends that Crabtree's entitlement to the RSA 511:2, XVIII exemption is vitiated by the provisions of RSA 161-C:11, II. We disagree. We also note the division's statement that "[t]o the extent this Court determines that Crabtree's wildcard argument has any merit, it should remand for development of the facts." We agree, and therefore "vacate the trial court's ruling and remand the matter for a more complete appraisal of the [debtor's] property so that the exemption amounts may be properly determined." *Landry v. Landry*, 154 N.H. 785, 789 (2006).

V

Finally, the estate challenges the trial court's denial of bank charges, attorney's fees and costs. Because it has yet to be determined whether the funds in Crabtree's bank account were exempt from the division's lien, the question of the estate's entitlement to reimbursement of bank charges is not ripe. Such is also the case with regard to the estate's request for costs and attorney's fees. However, we can say at this point that the estate is not entitled to costs or fees incurred in litigating the two issues upon which it

has not prevailed, *see Harkeem v. Adams*, 117 N.H. 687, 690-91 (1977), and we cannot help but observe that a substantial portion of the estate's attorney's fees in this case appear to have been generated by the estate's dogged reliance upon a plainly incorrect interpretation of our decision in *Angley-Cook*.

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.