IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

IN RE THE MARRIAGE OF

CASSANDRA ALLEN,
*Petitioner/Appellee,*

*and*

LYNN ALLEN,
*Respondent/Appellant.*

No. 2 CA-CV 2016-0079
Filed December 20, 2016

---

Appeal from the Superior Court in Pinal County
No. S1100DO201300816
The Honorable DeLana J. Fuller, Judge Pro Tempore

**REVERSED AND REMANDED**

---

COUNSEL

The Powell Law Firm, PLLC, Tucson
By Jay K. Powell
*Counsel for Petitioner/Appellee*

Susan M. Schauf, PLLC, Tucson
By Susan M. Schauf
*Counsel for Respondent/Appellant*

**OPINION**

Judge Staring authored the opinion of the Court, in which Presiding Judge Howard and Judge Espinosa concurred.

S T A R I N G, Judge:

**¶1** Lynn Allen appeals the trial court's rulings denying him a credit for the receipt of dependent child social security disability benefits ("DSSD") by his former spouse, Cassandra Quinonez. The DSSD payments duplicated money Lynn had separately paid Cassandra for child support. For the reasons that follow, we reverse and remand for further proceedings.

**Factual and Procedural Background**

**¶2** We view the record in the light most favorable to upholding the trial court's decision. *Milinovich v. Womack*, 236 Ariz. 612, ¶ 7, 343 P.3d 924, 927 (App. 2015). The parties married in 2011, and had a child in April 2012. Lynn suffered a stroke in December 2012, and subsequently began receiving long term disability ("LTD") insurance benefits through an employer-sponsored plan as well as social security disability income. Cassandra filed for dissolution in May 2013. The court entered a support order in September, and modified it in January 2014. The court entered a consent decree in April 2014.

**¶3** In January 2015, Lynn petitioned for modification of child support, seeking an order requiring Cassandra, as "the primary custodial parent," to apply for DSSD for the child based on Lynn's disability, and for modification of Lynn's support obligation based on any change to Lynn's income as a result of DSSD.[1] In the petition, Lynn also asserted the availability of DSSD reduced the amount of Lynn's LTD benefits and had caused him to be deemed to have received overpayments that he was required to repay to the

_____

[1]The statutory basis for DSSD benefits is 42 U.S.C. § 402(d).

LTD insurer. He thus requested an order requiring Cassandra to reimburse the insurer for support Lynn paid using his LTD benefits.

¶4 Pursuant to the trial court's subsequent order, Cassandra applied for DSSD on behalf of the child, and received a retroactive DSSD payment of $14,200 covering the period of May 2014 to April 2015. She also began receiving $1,195 in DSSD for each month starting with May 2015. Cassandra argued Lynn's duplicate payment was a nonrefundable overpayment under the Arizona Child Support Guidelines,[2] and also that federal law[3] prohibited transferring DSSD to Lynn or the insurer. Lynn argued the Guidelines entitled him to credits for both DSSD and the support he paid using his own funds, and demanded an immediate transfer of the DSSD to permit him to repay the insurer.

¶5 The trial court concluded Cassandra had been "enriched with the overpayments" and that there was "a flaw in the policy," but that it nevertheless had no authority to order Cassandra to transfer the lump sum payment to Lynn. The court denied Lynn judgment or any credit for the $14,200 lump sum payment, but terminated child support nunc pro tunc to October 2015, and entered judgment against Cassandra for five months of duplicate payments Lynn had made after monthly DSSD commenced. Lynn timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(2).

**Discussion**

¶6 On appeal, Lynn argues the trial court erred by: 1) not crediting him for the lump sum payment of derivative benefits pursuant to Guideline 26(B); 2) granting judgment for reimbursement of five monthly support overpayments when he had overpaid a total

---

[2]*See* A.R.S. § 25-320 app. § 26.

[3]*See* 42 U.S.C. §§ 407(a) (exempting benefits from legal process), 1007(j) (prohibiting representative payee's use of benefits "other than for the use and benefit of" beneficiary); 20 C.F.R. §§ 404.2035 (responsibilities of representative payee), 404.2040 (acceptable uses of benefits payments).

of six months; and 3) terminating rather than modifying his support obligation.

**Derivative Benefits and the Child Support Guidelines**

¶7        The Guidelines were adopted by the Arizona Supreme Court, pursuant to statutory requirement, to govern the determination of "the amount of child support" based on "all relevant factors."  A.R.S. § 25-320(D); *see also Milinovich*, 236 Ariz. 612, ¶ 8, 343 P.3d at 927.  The Guidelines are intended "to establish a standard of support for children consistent with their needs and the ability of parents to pay, and to make child support awards consistent for persons in similar circumstances."  *Milinovich*, 236 Ariz. 612, ¶ 8, 343 P.3d at 927, *quoting Engel v. Landman*, 221 Ariz. 504, ¶ 38, 212 P.3d 842, 851 (App. 2009).  We review the trial court's interpretation of the Guidelines de novo.  *Clay v. Clay*, 208 Ariz. 200, ¶ 5, 92 P.3d 426, 428 (App. 2004).  In doing so, we view the "plain language" of the Guidelines "as the most reliable indicator of the supreme court's intent."  *Milinovich*, 236 Ariz. 612, ¶ 10, 343 P.3d at 927.

¶8        Guideline 26 provides in relevant part:

> Benefits, such as Social Security Disability . . . received by a custodial parent on behalf of a child, as a result of contributions made by the parent paying child support shall be credited as follows:
>
> 1.  If the amount of the child's benefit for a given month is equal to or greater than the paying parent's child support obligation, then that parent's obligation is satisfied.
>
> 2.  Any benefit received by the child for a given month in excess of the child support obligation shall not be treated as an arrearage payment nor as a credit toward future child support payments.

> 3. If the amount of the child's benefit for a given month is less than the parent's child support obligation, the parent shall pay the difference unless the court, in its discretion, modifies the child support order to equal the benefits being received at that time.

A.R.S. § 25-320 app. § 26(B). The text of Guideline 26(B) governs the application of the child's derivative benefit, in this case DSSD, to the obligor's "child support obligation," and in all cases requires the benefit "for a given month" to be applied to the support obligation. The term "child support obligation" is used throughout the Guidelines, and refers to the monthly obligation calculated pursuant to the Guidelines. *See* § 25-320 app. § 2(F) ("Monthly figures are used to calculate the child support obligation.").

¶9        Accordingly, the monthly child support obligation is satisfied up to the amount of the benefit received for the same month. *See* § 25-320 app. § 26(B)(1), (3). The Guidelines, however, prohibit application of the benefit to any period other than the "given month" for which it is received. § 25-320 app. § 26(B)(2). This interpretation is consistent with the approach followed in *Clay*. There, we instructed the trial court to determine "the dates covered by" a lump sum payment of derivative benefits and apply it to the support owed for the same period, which in that case had been "reduced to judgments" for arrears. *Clay*, 208 Ariz. 200, ¶¶ 2, 9, 92 P.3d at 427, 429.

¶10        The language of Guideline 26(B) is mandatory, and nothing in the text suggests it ceases to apply when an obligor pays support using personal funds before the child receives derivative benefits for the same time period, as is the case here. *See* § 25-320 app. § 26(B). To refuse to apply benefits under such circumstances would require redefining the term "child support obligation" to mean whatever amount is left over after first applying payments from non-benefits funds, an interpretation not supported by the text of the Guidelines. *See* § 25-320 app. §§ 8-10 (general provisions for calculation of support obligation). And, Guideline 26 says nothing about support payments made from an obligor's personal funds. It does not prohibit the application of such payments to arrears or

future obligations; nor does it prohibit the reimbursement of such payments.

¶11 Further, to the extent *Clay* suggests that no circumstance exists in which an obligor may receive a refund of an alleged overpayment, *see* 208 Ariz. 200, ¶ 9, 92 P.3d at 429, it is no longer an accurate statement of Arizona law. Currently, A.R.S. § 25-527 allows an obligor to seek reimbursement of excess support payments.[4]

¶12 It is also unclear whether *Clay* involved any overpayment as a result of payments from the obligor's personal funds. There, the obligor was the subject of multiple "contempt petitions" and "civil arrest warrants" for nonpayment of child support over a period of many years, though the opinion is silent about the extent of any payments the obligor may ultimately have made towards his arrears. *Clay*, 208 Ariz. 200, ¶ 2, 92 P.3d at 427. The decision to vacate the trial court's judgment referred explicitly to the fact that derivative benefits belonged to the child and could not be transferred to the obligor. *Id.* ¶ 8. *Clay* thus highlights the prohibition on direct transfer of benefits belonging to the child, without confirming whether an overpayment existed; the court did not address the issue of whether a refund is permissible when an overpayment is created by payment of support using non-benefits funds. *See id.*

¶13 Moreover, we agree with Lynn that applying a credit for lump sum derivative benefits only when the obligor owes arrears would create an incentive to incur arrears, and would punish obligors with pending social security applications who keep their support payments current. *See In re Marriage of Stephenson & Papineau*, 358 P.3d 86, 93-94 (Kan. 2015); *Paulhe v. Riley*, 722 N.W.2d 155, ¶¶ 21-23 (Wis. 2006). Our interpretation of Guideline 26 is consistent with the public policy considerations behind the Guidelines, which were adopted in part to establish support consistent with children's needs and parents' ability to pay, as well as "[t]o make child support

---

[4]Section 25-527 became effective two months after the decision in *Clay*. 2004 Ariz. Sess. Laws, ch. 105, § 1; *Clay*, 208 Ariz. 200, 92 P.3d 426.

orders consistent for persons in similar circumstances." § 25-320 app. § 1(A), (B); *see also Cummings v. Cummings*, 182 Ariz. 383, 385, 897 P.2d 685, 687 (App. 1994).

## Petition for Modification of Support

**¶14** We review the trial court's ruling on Lynn's petition for modification of support for an abuse of discretion. *See Little v. Little*, 193 Ariz. 518, ¶ 5, 975 P.2d 108, 110 (1999). A court abuses its discretion when it "commits an error of law in the process of reaching a discretionary conclusion." *In re Marriage of Williams*, 219 Ariz. 546, ¶ 8, 200 P.3d 1043, 1045 (App. 2008).

### Termination of Support

**¶15** The duration of child support is governed by statute and the Guidelines, which generally require support to continue until the child is emancipated or reaches majority. A.R.S. §§ 25-320 app. § 4, 25-501(A). Here, Lynn argues support should be continued so that any DSSD in excess of his recalculated monthly support obligation can be applied to his share of the child's medical expenses for the same month. We agree. *See Keefer v. Keefer*, 225 Ariz. 437, ¶¶ 11, 14, 239 P.3d 756, 759-60 (App. 2010). Similarly, continuation of the support order is necessary to govern the parents' shared responsibility for payment of medical expenses, and also the schedule for claiming tax exemptions, consistent with Guidelines 9(A) and 27. § 25-320 app. §§ 9(A), 27. Thus, we conclude the trial court erred by terminating support altogether, rather than recalculating the amount.[5]

---

[5]Cassandra argues this issue is waived because Lynn failed to object to termination in the trial court. At the hearing, however, the court and parties discussed an order that DSSD would cover Lynn's monthly support obligation, and that the collection of support through the clearinghouse should be terminated. On this record, Lynn has not waived the right to assert this error in a timely appeal from the court's signed order, which was the first indication that Lynn's support obligation had been terminated entirely. Moreover, the duty of support is paramount to all other obligations,

**Lump Sum Payment**

¶16      With respect to application of the lump sum payment, Lynn's arguments to the trial court focused heavily on seeking the immediate transfer of benefits funds that belonged to the child and are exempt from legal process. *See* 42 U.S.C. § 407(a). Lynn has neither argued nor cited authority suggesting repayment of a debt incurred by a third party for support of a beneficiary is an acceptable use of DSSD funds. *See* 20 C.F.R. § 404.2040(d) (use of benefits to pay creditors allowed only for certain debts of the beneficiary). And he appears to concede that even the non-Arizona cases he relies on in seeking a general credit or refund do not support ordering the direct transfer of the child's DSSD. We thus agree with the trial court's conclusion that it lacked authority to order transfer of the $14,200 lump sum payment to Lynn or the LTD insurer.

¶17      However, Lynn also argued he was entitled to credit for both his personal support payments and the DSSD the child received as a result of Lynn's disability. The trial court determined Cassandra had been enriched with the duplicate payments and that the policy was flawed, but nevertheless concluded it had no choice but to deny consideration for the lump sum payment that duplicated Lynn's personal support payments for May 2014 to April 2015. In so concluding, however, the court misapplied Guideline 26(B), which required each month of DSSD to be applied to Lynn's support obligation for the same month. *See also Clay*, 208 Ariz. 200, ¶ 9, 92 P.3d at 429. Pursuant to Guideline 26(B)(3), Lynn was responsible for paying the small monthly difference between the monthly support obligation and DSSD, leaving the bulk of his personal support payments as a credit available to be applied to future support obligations or reimbursed. The court's denial of a credit for Lynn's personal support payments was incorrect as a matter of law, and is therefore reversed.

---

§ 25-501(C), and we hesitate to consider this duty waived through the actions of either parent.

**Monthly Payments**

¶18        The trial court's conclusion that Lynn was entitled to a judgment for duplicate monthly payments provided Lynn with a credit for both his personal support payments and the child's DSSD in accordance with Guideline 26.  The decision to credit Lynn for five months of duplicate payments despite finding six were overpaid was, however, erroneous.  The court should have credited Lynn for six months of duplicate payments.

¶19        Our remand requires the trial court to determine the appropriate remedy for Lynn.  The ability to request reimbursement of overpaid support pursuant to § 25-527(A) may provide Lynn a remedy, although his entitlement to make such a request accrues only after his support obligation is terminated.[6]  As discussed below, it might also be permissible for the court to order Cassandra to reimburse Lynn at this time by deviating from the Guidelines, including through the entry of judgment.

¶20        Guideline 20(A) requires a court fashioning a support order to "deviate" from the Guidelines and order a different amount of child support "after considering all relevant factors" and concluding certain specific criteria have been met.  §§ 25-320(D), 25-320 app. §§ 3, 20.  In order to deviate from the Guidelines, a trial court must make written findings that "[a]pplication of the guidelines is inappropriate or unjust" and that deviation is consistent with the child's best interests.  § 25-320 app. § 20(A)(1)-(3).  The court must also indicate what the child support order would have been both with and without the deviation.  § 25-320 app. § 20(A)(4)-(5).  Notably, "[a] deviation that reduces the amount of child support paid is not, by itself, contrary to the best interests of the child."  § 25-320 app. § 20(A)(2).

¶21        In *Marriage of Stephenson*, the Supreme Court of Kansas, faced with facts very similar to those present here, and relying on a

_____

[6] In light of the child's age, Lynn's support obligation is unlikely to terminate until many years from now when the child reaches majority or becomes emancipated.  *See* § 25-501(A).

similar guideline permitting deviation, held a trial court may order repayment of overpaid support "from funds that are discrete from [the child's] benefits." 358 P.3d at 99-100; *see also Hamilton v. Reynolds*, 5 N.E.3d 1053, ¶¶ 37-42 (Ohio Ct. App. 2013) (affirming trial court order to reimburse overpaid support in monthly installments determined after consideration of parties' finances). We agree and conclude that in such circumstances a court "might adjust an obligor's support obligations, require reimbursement of the duplicative payments from funds that are discrete from [the derivative] benefits, or fashion some other equitable remedy permitted under applicable federal statutes and regulations." *Marriage of Stephenson*, 358 P.3d at 100.

¶22        We therefore conclude the issuance of a judgment and order for Lynn's repayment are permissible provided the trial court makes requisite findings based on the consideration of "all relevant factors." *See* §§ 25-320, 25-320 app. §§ 3, 20. In addition to consideration of the parties' financial resources, relevant factors in this case may include the fact Cassandra was warned she might ultimately be required to reimburse Lynn for support payments duplicated by DSSD. *See Hamilton*, 5 N.E.3d 1053, ¶¶ 33-34 (affirming judgment in part because obligee was "clearly on notice that she may have to allocate resources" to reimburse obligor).[7]

## Attorney Fees

¶23        Lynn requests an award of costs and attorney fees on appeal and in the trial court pursuant to A.R.S. § 25-324 and Rule 21(a), Ariz. R. Civ. App. P. Lynn claims Cassandra has been unjustly enriched by receiving duplicate payments, and that she acted in bad faith by failing to immediately disclose her receipt of the lump sum payment and for allegedly spending it in violation of the trial court's orders not to do so. These arguments involve Cassandra's behavior before the trial court, and have no bearing on the reasonableness of her positions on appeal. Moreover, we lack current information

---

[7]This opinion should not be construed as directing the trial court to fashion any particular remedy on remand. We leave that determination to the trial court.

sufficient to permit us to consider "the financial resources of both parties" in order to award fees on appeal pursuant to § 25-324(A). *See Countryman v. Countryman*, 135 Ariz. 110, 111, 659 P.2d 663, 664 (App. 1983) (appellate court may award fees under § 25-324 when record is sufficient to consider parties' financial resources). Accordingly, we decline Lynn's request for fees at this time. We do not, however, constrain the trial court from considering his request for appellate attorney fees on remand. Lynn is, however, entitled to costs on appeal pursuant to A.R.S. § 12-341, subject to compliance with Rule 21.

## Disposition

**¶24**　　For the reasons discussed above, we reverse the trial court's ruling terminating support and ordering judgment against Cassandra, and we remand for further proceedings consistent with this opinion.