NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KEVIN NEBEKER, *Petitioner/Appellant*,

*v.*

TIFFANY DIANE HARRIS, *Respondent/Appellee*.

No. 1 CA-CV 19-0563 FC
FILED 3-16-2021

Appeal from the Superior Court in Maricopa County
No. FC2018-052500
The Honorable Alison Bachus, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Fowler St. Clair, PLLC, Scottsdale
By Benjamin S. Kuipers
*Counsel for Petitioner/Appellant*

Riggs Ellsworth & Porter, PLC, Mesa
By Paul C. Riggs, Spencer T. Hale
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**C R U Z**, Judge:

¶1         Kevin Nebeker ("Father") appeals several rulings in the decree dissolving his marriage to Tiffany Diane Harris ("Mother"). He also appeals the lack of findings in a temporary parenting time order and the partial denial of two petitions to hold Mother in contempt. The temporary order and contempt rulings are not appealable. We reverse the portion of the decree denying Father's claim of his share of $12,000 Mother withdrew from a community bank account and remand for reconsideration of that claim. In all other respects, we affirm the decree.

## FACTUAL AND PROCEDURAL HISTORY

¶2         The parties lived with their three children in Arizona until March 2018, when they mutually decided to move to Utah where they both have family. Mother moved first because she found a job in Utah as a real estate agent. Father was not working at that time and planned to bring the children to Utah soon thereafter. Instead, Father remained in Arizona and petitioned for dissolution in superior court. Father claimed he stayed in Arizona because Mother planned to file for divorce in Utah.

¶3         Mother responded to the dissolution petition and separately petitioned for a temporary order allowing her to relocate the children to Utah. The superior court entered a temporary order for joint legal decision-making authority, designating Mother primary residential parent in Utah, and providing long-distance parenting time for Father. Father moved to Utah later that summer.

¶4         After he moved, Father petitioned to modify the temporary order, asking for equal parenting time and final authority for education decisions, alleging that Mother made unilateral decisions. Father also alleged that Mother was in contempt of the temporary joint legal decision-making order because she refused to communicate regarding schooling, refused to disclose her new address, and failed to complete the parenting class. The court deferred ruling on both petitions until the trial. The court

also denied Father's motion to set a temporary orders hearing, finding it was actually a motion to modify the existing temporary orders and holding a second temporary orders hearing a few weeks before the upcoming trial was not in the interests of judicial economy.

¶5        The parties agreed to continue the trial several months to April 2019, and Father again asked to modify the temporary parenting time and child support orders to reflect that he now lived in Utah and exercised more parenting time.   Father filed a second contempt petition, again alleging Mother's unilateral decision-making; her refusal to communicate and cooperate; and her failure to provide health insurance for the children, advise Father of her new address, and complete the parenting class.  This too was deferred to trial, but the court scheduled a hearing on Father's petition to modify the temporary orders.  Before that hearing, however, the parties agreed to equal parenting time and to adjust Father's child support obligation accordingly.    The court entered an order adopting this agreement.

¶6        Following the April 18, 2019 trial, the superior court entered a decree ordering joint legal decision-making authority and giving Mother final authority over education decisions.   The court granted Mother's request to permanently live with the children in Utah.   The court found Mother in contempt for failing to complete the parent education class and failing to obtain medical insurance for the children but did not find her other actions contemptuous.  The court denied Father's claim for his share of $12,000 that Mother withdrew from a community bank account, finding that Father failed to show that Mother used the funds for non-community purposes.  Finally, the court ordered the parties to pay their own attorneys' fees.

¶7        The superior court denied Father's post-decree motion to amend the child support order based on Mother's income and his motion to clarify reimbursement for the child support overpayment.  Father timely appealed from the decree and these post-decree orders.   We have jurisdiction over the appeal from the decree and post-decree orders under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) and (2).   We address our jurisdiction over the other rulings below.

**DISCUSSION**

I.    The Temporary Order Is Not Appealable.

¶8        Father contends the temporary order does not contain the statutorily required findings addressing the best interests and relocation

3

factors and that it is not supported by the evidence. *See* A.R.S. §§ 25-403, 25-408. Temporary orders are not appealable. *Gutierrez v. Fox*, 242 Ariz. 259, 264, ¶ 12 (App. 2017). The proper challenge to a temporary order is by special action, and Father failed to bring a special action. We may, in our discretion, accept special action jurisdiction sua sponte. *See Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001). However, we decline to do so here because the superior court later reconsidered legal decision-making authority, parenting time, and relocation based on additional evidence and testimony presented at trial, and Father has appealed that ruling. *See DePasquale v. Superior Court (Thrasher)*, 181 Ariz. 333, 337 (App. 1995).

II.     The Record Supports the Final Relocation Order.

¶9      We review the superior court's decision on a relocation petition for an abuse of discretion. *Murray v. Murray*, 239 Ariz. 174, 176, ¶ 5 (App. 2016). An abuse of discretion exists when the record, viewed in the light most favorable to affirming the orders "is 'devoid of competent evidence to support' the decision." *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)). In determining whether to allow a parent to relocate, the court must consider all the relevant factors set forth in A.R.S. § 25-408(I), which includes a determination of the children's best interests under § 25-403(A). "The burden of proving what is in the child[ren]'s best interests is on the parent who is seeking to relocate the child[ren]." A.R.S. § 25-408(G).

¶10     At the outset, we reject Father's claim that the superior court erroneously placed the burden of proof on him. The court expressly stated that Mother had to prove the relocation was in the children's best interests.

¶11     Father argues the superior court ignored or discounted evidence weighing against the relocation to Utah. The court of appeals does not reweigh the evidence presented to the superior court, but instead defers to that court's determination of witness credibility and the weight to give conflicting evidence. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019); *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015).

¶12     Father contends the court ignored evidence showing the relocation would not improve the general quality of life for the children or Mother. *See* A.R.S. § 25-408(I)(3). Father highlights evidence showing the positive aspects of living in Arizona. However, the record supports the finding that the move will improve Mother's quality of life because she has extended family there, along with her new fiancée and new baby. Father points to evidence that Mother could earn more as a real estate agent in

Arizona. The court considered this evidence, and we will not reweigh how the court balanced these competing concerns. *Lehn*, 246 Ariz. at 284, ¶ 20.

¶13 The court found the children's quality of life will not suffer despite a change in their school, church, and friends. *See* A.R.S. § 25-408(I)(3). Father argues the court "downplayed" the fact that the move to Utah caused the children's grades to suffer. Although the older two children's grades have fluctuated after the move to Utah and one child had some classroom behavior problems, the court heard testimony that the child had similar behavior challenges in Arizona. The court heard testimony that Father's regular involvement helped with the children's school performance. For these reasons we reject Father's contention that the evidence shows that the move negatively affected their quality of life and emotional, physical, or developmental needs. *See* A.R.S. § 25-408(I)(3), (6). Rather, it shows the importance of having both parents involved on a regular basis and living in the same city.

¶14 Father also contends the move was harmful to the children's emotional, physical, or developmental needs because Mother allowed contact between the youngest child and another child who had previously sexually abused him. *See* A.R.S. § 25-408(I)(6). Mother testified that the abuse occurred two years before and that any contact between the two children is supervised. Additionally, Father did not dispute Mother's testimony that after the incident the children spent time together in Arizona at the marital residence without his objection. Thus, the court did not abuse its discretion when it considered this evidence under A.R.S. § 25-403(A)(8) and concluded that a no-contact order would adequately protect the child.

¶15 Although two of the children expressed a desire to live in Arizona, Father agreed before the divorce that the family should move to Utah even though it would require a change in school, church, and other activities. This detracts from his argument that the move was contrary to the children's best interests. Father testified that he would remain in Utah if the court granted a permanent relocation. This would allow for equal parenting time, which the court found to be in the children's best interests. The record supports the relocation decision.

III. The Record Supports Awarding Mother Final Decision-Making Authority for Education.

¶16 Father argues that the superior court abused its discretion by failing to state any basis for awarding Mother final say on education issues. However, the court expressly stated that an award of final decision making

on education issues was necessary because of the parties "persistent conflict about education." Given the parties' inability to coparent or communicate, the court was within its discretion to choose one parent. *See* A.R.S. § 25-401(2); *Nicaise v. Sundaram*, 245 Ariz. 566, 568-69, ¶¶ 14-15 (2019).

¶17        The best-interests findings, as a whole, informed the superior court's decision to award final authority to Mother for education issues. For example, both parties failed to reasonably communicate with each other or consider the other parent's views. Although Mother did not include Father when choosing the children's school, she did so on the advice of counsel and because she did not know Father had moved to Utah when she enrolled the children in her neighborhood school. She also testified that she enrolled them in a school not far from the neighborhood that Father suggested. Father argues the decline in the children's grades should weigh against Mother's having the final say, but the court reasonably concluded the academic issues were a result of the parents' conflict, the lack of a consistent parenting time schedule, and not entirely Mother's fault. Lastly, Father argues that because Mother failed to pay school enrollment fees, she should not get final authority for education issues. However, Mother testified that she only learned of the unpaid fees a few days before the trial.

¶18        In short, the record shows that both parents are involved in the children's daily lives, yet they cannot communicate or coparent and education was a particularly contentious issue. We cannot say, on balance, that the court abused its discretion in awarding Mother final authority.[1]

IV.        Denial of Contempt Allegations is Not Appealable.

¶19        Father filed two contempt petitions before trial based on Mother's alleged violation of several temporary orders. The superior court granted these petitions in part, finding Mother in contempt for failing to obtain medical insurance for the children and failing to complete the parenting class in a timely manner. Father contends the court ignored significant evidence in denying the remainder of the contempt allegations. We lack jurisdiction to consider an appeal from the denial of a petition for contempt. *See Eans-Snoderly v. Snoderly*, 249 Ariz. 552, 555, ¶ 8 (App. 2020).

---

[1]        Father argues for the first time in his reply brief that the evidence did not support the finding that he would exclude Mother. We do not consider issues raised for the first time in a reply brief. *See Johnson v. Provoyeur*, 245 Ariz. 239, 243, ¶ 13 n.5 (App. 2018).

V. **The Superior Court Did Not Abuse its Discretion by Failing to Order Immediate Reimbursement for Father's Child Support Overpayment.**

¶20 After Father moved from Arizona to Utah and began exercising equal parenting time, he petitioned to modify the parenting time orders to reflect this change. The court later entered a stipulated order modifying Father's child support obligation to reflect his equal parenting time. The decree also reduced Father's child support obligation from $1,262.19 to $286 per month effective August 1, 2018, the date Father began exercising equal parenting time. According to Father's calculations, this resulted in an overpayment of $6,796.33. The decree did not address how Father should be reimbursed for this overpayment, so he sought clarification in a post-decree motion. The court concluded that it was not required to set forth a repayment method as a matter of law and denied the motion. Father argues this was an abuse of discretion.

¶21 Father argues that the overpayment remedy provided in A.R.S. § 25-527(A) is not the only option available to reimburse a parent who overpays child support. Section 25-527(A) provides that a parent whose support obligation has terminated may request reimbursement of any overpayment within twenty-four months after the support obligation terminates. In addition to § 25-527(A), courts may reimburse a parent for an overpayment before the support obligation terminates from funds that are not for the children's benefit or by deviating from the Child Support Guidelines, A.R.S. § 25-320 Appendix ("Guidelines"), for future support payments where appropriate. *See Amadore v. Lifgren*, 245 Ariz. 509, 517, ¶ 24 (App. 2018); *In re Marriage of Allen*, 241 Ariz. 314, 318-19, ¶¶ 19-22 (App. 2016). However, these remedies are discretionary. *Id.*

¶22 Father argues the failure to order reimbursement was inequitable because he could have been paid from Mother's share of the community retirement account without impacting funds that were for the children's benefit. *See Allen*, 241 Ariz. at 319, ¶ 21. Father also argues the court's ruling is unfair because he cannot seek reimbursement under § 25-527(A) until 2029, when his support obligation terminates, thus providing Mother an interest-free $6,796.33 loan. Contrary to Mother's position on appeal, Father did not waive this argument. Father's pretrial statement asked the court to offset any child support overpayments against Mother's interest in his retirement account.

¶23 Although the court's ruling means Father has to wait until 2029 to recover the child support overpayment, we cannot say the court

abused its discretion. The remedy Father sought was not mandatory. *See Amadore*, 245 Ariz. at 517, ¶ 24; *Allen*, 241 Ariz. at 318-19, ¶¶ 19-22. Moreover, it is not clear that Mother's share of the retirement account is sufficient to offset both the share of the community debts she was ordered to pay and the child support overpayment.[2] Therefore, we find no abuse of discretion.

VI.     The Superior Court Properly Attributed Minimum Wage Income to Mother for Purposes of Child Support.

¶24     At the time of trial, Mother was not working full time. The superior court attributed a minimum wage income to Mother in addition to $750 per month she earns from an essential oils home-based business to calculate the child support obligation. Father argues this was an abuse of discretion because the evidence showed Mother was, in fact, working in real estate and could earn between $51,900 and $60,980 annually as a real estate agent in Utah.

¶25     We review child support awards for an abuse of discretion and accept the superior court's findings of fact unless they are clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009). The court may attribute income up to earning capacity when a parent is unemployed or working below his or her full earning capacity, "if the parent's earnings are reduced voluntarily and not for reasonable cause." *Little*, 193 Ariz. at 521, ¶ 6; Guidelines § 5(E). The Guidelines give the court discretion to consider the reasons for the parent's reduced income. Guidelines § 5(E).

¶26     The evidence showed Mother had worked as a real estate agent when she first moved to Utah, but she left that position after Father harassed her and her employer. Mother's February 2019 financial affidavit stated that she was a self-employed real estate agent at ReMax and earned $5,000 in the past twelve months in addition to what she earned from her home-based business. Father did not provide any evidence to refute this, nor did he dispute Mother's claim that she has been unable to work full-time in real estate because of the harassment incident with her former employer and because she recently had a baby. Although Father's expert witness testified that a real estate agent with Mother's experience could earn at least $51,900, the court was within its discretion to find Mother was

---

[2]     Mother's share of the retirement account is "approximately" $13,000. She was ordered to pay her share of other debts totaling $7,824.06 from her share of the retirement. Adding reimbursement for the child support overpayment would result in a $1,620.39 shortfall.

not currently able to earn that amount because of her recent employment history and new baby. We affirm the income attributed to Mother for purposes of child support.

VII. Mother Failed to Show the Withdrawal of $12,000 From a Community Account Was Not Waste.

¶27 Father claimed he was entitled to reimbursement for $12,000 Mother withdrew from a community bank account without his consent. The superior court denied this request, finding that the parties mutually agreed that Mother would use those funds for her living expenses in Utah. We review the court's apportionment of community property for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998).

¶28 Courts may consider a spouse's excessive or abnormal expenditures or the concealment or fraudulent disposition of community assets when apportioning community property. *See* A.R.S. § 25-318(C); *Gutierrez*, 193 Ariz. at 346, ¶ 6. When one spouse makes a prima facie case of such waste, the spouse making the withdrawals then bears the burden of showing the money was spent to benefit the community. *Gutierrez*, 193 Ariz. at ¶¶ 6-7.

¶29 The record does not show that the parties mutually agreed that Mother would withdraw $12,000 from the joint account. Although Mother admitted withdrawing the funds, neither party testified that Father agreed to this. Thus, Father made a prima facie case of waste.

¶30 Furthermore, the court erroneously placed the burden on Father to show that Mother did not spend the funds on community expenses. Because Father made a prima facie case of waste, *Mother* had the burden of showing that she spent the funds for the benefit of the community. *Id.*

¶31 Mother testified that she withdrew the $12,000 from a community account and deposited the funds into her busines account. She did not provide any evidence that Father had access to her business account. Nor did Mother show that she spent these funds on living expenses in Utah; rather her testimony was that she sold her Arizona business in February 2018 for $8,000 and used *those* funds for living expenses. Although the bank statements from the business account show Mother spent the $12,000 over the next several months, we cannot determine from those statements whether these expenditures benefitted the community.

¶32      Because Mother bore the burden of proof and the record did not support the factual findings, we conclude the court abused its discretion. We vacate the portion of the decree denying Father's claim for reimbursement and remand for reconsideration. The superior court may exercise its discretion to allow additional evidence on remand.

VIII.    The Court Did Not Abuse Its Discretion in Denying Attorneys' Fees to Father.

¶33      Finally, Father contests the denial of his request for attorneys' fees under A.R.S. § 25-324. We review an attorneys' fees decision for an abuse of discretion. *Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004).

¶34      The court may award attorneys' fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A). Balancing these factors is "a matter for the trial court's sound discretion." *Magee*, 206 Ariz. at 592-93, ¶ 17.

¶35      The superior court found Father has considerably more financial resources than Mother. However, the court declined to award fees because both parties acted unreasonably and failed to communicate or act in the children's best interests. The court further found that Father was unreasonable, in part, because he filed a legally incorrect motion to set aside the temporary order arguing that the court must make detailed § 25-403 findings. On appeal, Father argues that, in light of *Layne v. LaBianca*, 249 Ariz. 301, 303, ¶ 8 (App. 2020), his motion to set aside was correct and, therefore, reasonable. However, Father only argued that the court failed to make detailed *§ 25-403* findings in the temporary order. This is contrary to the holding in *Fox*, 242 Ariz. at 267-68, ¶ 34, which was issued more than a year before Father's motion. Therefore, the motion was, in fact, legally incorrect. Although *Layne* came out after Father filed the motion to set aside and applied to § 25-408(I) relocation factors, the motion did not assert that detailed relocation findings were required.

¶36      The record supports the findings that the parties acted unreasonably, and that Father has greater resources. Therefore, we affirm the denial of attorneys' fees to Father.

¶37      Both parties request attorneys' fees and costs on appeal, citing § 25-324. In the exercise of our discretion, after considering the financial resources and reasonableness of the parties, we decline to award fees to either party. Neither party is entitled to an award of costs because neither was entirely successful on appeal. *See* A.R.S. § 12-342.

## CONCLUSION

¶38 The temporary order and contempt rulings are not appealable. We reverse the portion of the decree denying reimbursement for Father's share of the $12,000 Mother withdrew from a community bank account and remand for reconsideration. In all other respects, we affirm the decree.



AMY M. WOOD • Clerk of the Court
FILED:    AA

11